(62 South. 494.)

No. 19,933.

STATE ex rel. HARTFORD FIRE INS. CO.
v. FITZPATRICK, State Tax Collector.

(June 9, 1913.)

*(Syllabus by the Court.)*

INSURANCE (§ 7*)—INSURANCE COMPANIES.

Under the general license law (Act No. 171 of 1898, p. 387) a fire insurance company owes but one license, based on the total gross annual premiums for the preceding year; and the State Tax Collector has no authority to demand a license for each kind of property insurance carried on by the company under its charter and the laws of this state.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 6; Dec. Dig. § 7.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the State, on the relation of the Hartford Fire Insurance Company, against John Fitzpatrick, Tax Collector. From a judgment for plaintiff, defendant appeals. Affirmed.

William W. Westerfield, of New Orleans, for appellant. Hall, Monroe & Lemann and Howe, Fenner, Spencer & Cocke, all of New Orleans, for appellee.

LAND, J. The Hartford Fire Insurance Company tendered to the defendant tax collector $3,000 as amount due by it for a state license for the year 1913 to carry on the business of insuring property against damage by fire, inland marine loss, and damage by tornado (or windstorm), and sprinkler leakage. On the refusal of the defendant tax collector to accept said sum and to issue a license, the insurance company instituted the present mandamus suit to compel him to do so.

The relator in the petition represented that the said sum of $3,000 was the full amount due to the state for said license under section 9 of Act No. 171 of 1898 on the basis of the gross amount of premiums accruing during the year 1912 on all risks located in the state of Louisiana, and upon risks located in other states or foreign countries upon which no license tax had been paid therein.

A certificate by the Secretary of State annexed to the petition for mandamus recites that the relator, having complied with the laws of the state of Louisiana governing fire, inland marine, sprinkler leakage, and tornado insurance, was authorized to transact such business in the state of Louisiana for and during the year 1913, and that the sworn statement on file in the office of the Secretary of State shows that the relator had collected net premiums in this state during the year 1912, amounting to $200,735.86, of which $198,184.23 was classed under the head of "Fire," and $2,551.63 under the head of "Marine."

The defendant tax collector answered that the relator was engaged in four kinds of business in this state and had received premiums during the year 1912 as follows:

| | |
|---|---:|
| Fire insurance | $190,545 40 |
| Tornado | 7,061 88 |
| Sprinkler leakage insurance | 576 95 |
| Inland marine insurance | 2,561 63 |

Defendant further answered that the relator was indebted for the license in question as follows: On fire insurance, $2,850, and $150 on each of the other three kinds of insurance, making a total of $3,300.

The case was tried, and there was judgment as prayed for by the relator. The defendant tax collector has appealed.

Act No. 171 of 1898, p. 387, contains three sections relating to the license taxation of insurance companies. Section 8 deals with life and accident insurance. Section 9 deals with fire, marine, and all other kinds of insurance not otherwise provided for. Under both sections the license is based on the gross amount of premiums on all risks located within the state and upon risks located in other states or foreign countries upon which no license tax has been paid thereon.

Under both sections the license tax is grad-

uated, as required by article 229 of the Constitution of 1898, according to the amount of gross annual premiums on all risks above mentioned. Under section 9, class 30, when said premiums are $15,000 or less, the license is $150. This is the minimum license tax. Class 29 calls for a tax of $225. Class 28 for a tax of $300, and so on until the maximum of $4,500 is reached.

Relator contends that the Hartford Insurance Company falls in class 10, providing for a license tax of $3,000, when the premiums are $200,000 and less than $210,000. The defendant tax collector contends that class 10 has no application to an insurance company which is transacting four different kinds of business, three of which fall within class 30 requiring a tax of $150 each regardless of the small amounts of premiums received. This ingenious contention, if correct, would increase the license tax of the company by $300. The relator contends that under section 9 its insurance business cannot be subdivided into four parts and each of them taxed as if carried on by a different and distinct company.

Under Act No. 105 of 1898, relating to the organization and operation of insurance companies, they may be formed for ten different general purposes, which practically cover the whole field of insurance. See section 1. Under this statute a company may be organized "to insure against loss or damage by fire, lightning, tempest on land," or to insure against "risk of inland navigation and transportation," or "to insure against loss or damage by water to any goods or premises arising from leakage or breakage of sprinklers and water pipes," or for any other one of the ten purposes recited in said section. Section 3 requires that companies formed under the provisions of the act for certain purposes should have certain amounts of capital stock ranging from $100,000 or $200,000, and further provides as follows:

"Any company which shall combine two or more of the subjects specified in section first of this act shall have a paid up cash capital equal to the joint sum of the capital required for each subject."

Section 13 of the same act specially authorizes fire insurance companies to insure property which such companies are authorized to insure against loss or damages by fire against damage, loss, or injury by water or otherwise, resulting from the accidental breaking of, or injury to, sprinklers, pumps or other apparatus arising from causes other than fire.

It is plain from the foregoing provisions that the statute specially authorizes fire insurance companies, *as such* to issue tornado and sprinkler leakage insurance, and also to issue inland navigation and transportation insurance if they have the capital required by the statute. The evidence shows that the three forms of insurance just mentioned are issued by fire insurance companies throughout the United States. The certificate of the Secretary of State shows that the relator has complied with the laws of this state and is authorized to make contracts of "fire, inland marine, sprinkler leakage and tornado insurance."

The same statute (article 3, § 1) requires every insurance company, other than a life company, prior to the 1st of March of each year to make a sworn report to the Secretary of State, showing, among other things, "its income during the preceding year, specifying the amount of cash premium received, the amount of notes for premiums," etc.

At the same session of the Legislature, provisions were made in the general license act (Act 1898, No. 171) for the taxation of insurance companies on the basis of their respective gross annual premiums. The section relating to the licensing of insurance companies reads as follows:

"Sec. 8. * * * That each and every life and accident insurance company (society) association, corporation or other organization or

firm or individual doing and conducting a life or accident insurance business of any kind in this state, whether such company (society), association, corporation or other organization or firm or individual is located or domiciled here or operating here, through a branch department, resident board, local office, firm, company, corporation, or agency of any kind whatsoever, shall pay a separate and distinct license on said business for each company represented, and said license shall be based on the gross annual amount of premiums on all risks located within the state, and upon risks located in other states or foreign countries, upon which no license has been paid therein, as follows, to wit:"

Here follows an enumeration of 69 different classes, graduated according to amount of premiums, and the imposition of license taxes ranging from $150 to $5,250.

"Sec. 9. * * * That each and every fire, marine and river insurance, guarantee, surety or indemnity company, society, association, corporation, or other organization or firm, or individual doing and conducting a fire, marine or river insurance, guarantee, surety or indemnity business of any kind, in this state, or any other insurance business not otherwise provided for, whether such company, society, association, corporation or other organization or firm, or individual is located or domiciled here or operating here, through a branch department, resident board, local office, firm, company, corporation, or agency of any kind whatsoever, shall pay a separate and distinct license on said business for each company represented, and said license shall be based on the gross annual amount of premiums on all risks located within this state, and upon risks located in other states or foreign countries, upon which no license has been paid therein, as follows, to wit:"

Here follows a graduation of licenses ranging from $150 to $4,500. Section 9 concludes as follows:

"Provided plate glass and steam boiler inspection insurance companies shall pay only one-third of above rates."

Both sections are overloaded with verbiage, which beclouds the text, but the manifest intent was to levy a single license tax on every company represented and doing business in this state. Section 7 of the same act reads in part as follows:

"The tax collector shall demand from each company applying for license, a certificate from the Secretary of State, certifying to the amount of business transacted during the preceding year by such company as shown by the sworn statement on file in his office, and the license of each company shall be based upon such certificate."

Taking sections 7, 8, and 9 together, there is no warrant for the issuing of more than one license to each company.

Defendant's contention rests on the proposition that the relator is conducting several *businesses* of insurance. The relator's business includes all the *purposes* for which it was organized, and the fallacy in the argument of defendant consists in the assumption that each *purpose* constitutes a separate insurance business. It might as well be argued that each department of a business concern constitutes a separate business. The consequence of defendant's contention is well stated by counsel for relator as follows:

"If every different risk insured against is a different business, there is no limit to the number of businesses one property insurer may be held to be engaged in, and no limit to the number of licenses that may be demanded from him."

In our judgment the business of a fire insurance company, for the purpose of license taxation, includes all branches that it may conduct under its charter and the laws of the state, and each fire company owes but one license tax, based on amount of total gross premiums.

Judgment affirmed.